| | |
|---|---|
| Robin Magee, <br><br> Plaintiff, <br><br> v. <br><br> Trustees of the Hamline University, Minnesota, Donald Lewis, David Titus (in his individual capacity), John Does 1-5, <br><br> Defendants. | Civil No. 11-00949 (JRT/AJB) <br><br><br> **ORDER AND** <br> **REPORT & RECOMMENDATION** |

This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on Defendant David Titus' Motion to Dismiss [Docket No. 20], a Motion to Dismiss or for Summary Judgment by Defendants Trustees of the Hamline University ("Hamline") and Donald Lewis (together, the "Hamline Defendants") [Docket No. 24], and Plaintiff's Motion for Leave to File an Amended Complaint [Docket No. 32]. The motions to dismiss [Docket Nos. 20 and 24] have been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b). For the reasons discussed below, Plaintiff's motion to amend is granted in part and denied in part and it is recommended that defendants' motions to dismiss be granted.

## FACTUAL BACKGROUND

Plaintiff Robin Magee was a tenured law professor at Hamline University School of Law. (Docket No. 1, Compl. ¶ 1.) Magee taught classes at Hamline on policing and police misconduct. (*Id.* at ¶ 9.) Magee actively participated in public debate about issues of race as related to state courts and police. (*Id.* at ¶ 8.)

In 2007, Magee wrote a letter to the editor of the St. Paul Pioneer Press commenting on a high-profile trial in which the defendant was accused of killing a St. Paul Police Officer. (Compl. ¶ 10.)  In her letter, Magee criticized the state courts and specifically disagreed with the decision of a Ramsey County Judge not to investigate allegations of racism among the jury.  (*Id.*)  Defendant David Titus, a police officer with the City of St. Paul, wrote a responsive letter to the editor, which also was published on the St. Paul Police Federation website.  (*Id.* at ¶ 11.)  In his response, Titus criticized Magee's opinions, suggested that Magee should have her "fitness to teach re-examined," and stated that he hoped Magee would keep her "race baiting and cop-hating" out of the classroom.  (*Id.*)  Magee alleges that Titus also contacted Hamline University with intent to have her fired.  (*Id.* at ¶ 12.)

Defendant Donald Lewis became Dean of the Hamline University School of Law following these events.  (Compl. ¶ 13.)  Magee believes that when Lewis became Dean, he began to work with police to suspend and then terminate her.  (*Id.*)

In September 2009, Magee was charged in Ramsey County District Court with multiple counts of tax law violations.  (Compl. ¶ 14; *see* Proposed Amended Compl. ("PAC") ¶ 47.) After she was charged, Magee was suspended from Hamline.  (Compl. ¶ 15.)

In February 2011, Magee was convicted of misdemeanor tax law violations.  (*See* Compl. ¶ 17.)  After return of the jury's verdict, Hamline initiated termination proceedings against Magee.  (*Id.*)  Magee believes that her termination from Hamline was the result of concerted efforts between Hamline and St. Paul police and that it was motivated by her public critique of local government.  (*Id.* at ¶¶ 17-18.)  Magee believes that Lewis and Hamline orchestrated her termination "to please police" and "prevent her from teaching about police misconduct,

and. . .restrain her speech," and in order to retaliate against her for "past speech criticizing government." (*Id.* at ¶ 17.)

## PROCEDURAL BACKGROUND

Magee filed her Complaint on April 15, 2011. (Docket No. 1.) The Complaint names Hamline University; Donald Lewis, Dean of Hamline University Law School; David Titus; and John Does 1-5 as Defendants. Magee's Complaint alleges violations of 42 U.S.C. § 1983 against all defendants. She alleges that defendants retaliated against her for exercise of her First Amendment rights and violated her right to petition the government for redress of grievances. (Compl. ¶¶ 19-24.) Magee's Complaint also asserts a claim for intentional interference with contract against Lewis (*Id.* at ¶¶ 25-27) and a claim for breach of contract against Hamline. (*Id.* at ¶¶ 28-31.)

On February 3, 2012, the Hamline Defendants filed a motion to dismiss for lack of service. (Docket No. 3.) On the same day, Magee filed a motion for extension of time to serve the complaint. (Docket No. 8.) This Court granted Plaintiff's motion on February 29, 2012. (Docket No. 18.) Magee served all defendants with her Complaint on March 30, 2012.

On April 20, 2012, Titus and the Hamline Defendants filed the present motions to dismiss. (Docket Nos. 20, 24.) In his motion to dismiss, Titus argues that Magee has failed to state a claim against him under 42 U.S.C. § 1983 and has failed to sufficiently allege that he was working under color of state law, in concert with state officials, or in conspiracy with other defendants to deprive Magee of her constitutional rights. In the Hamline Defendants' motion to dismiss, they argue that they are not government actors and are therefore not liable to Magee under 42 U.S.C. § 1983 and that Magee has not sufficiently alleged that they acted in concert or

conspiracy with state officials. In addition, they argue that Magee has failed to allege facts to support claims of breach of contract against Hamline or intentional interference against Lewis.

On May 11, 2012, Magee filed the present motion to amend the complaint. (Docket No. 32.) She filed her Proposed Amended Complaint on May 14, 2012. (Docket No. 36.) The Proposed Amended Complaint adds factual allegations, asserts new causes of action against Titus, Hamline, and Lewis, and adds as a defendant the St. Paul Police Federation ("SPPF"). The Proposed Amended Complaint asserts a violation of 42 U.S.C. § 1983 against all defendants; intentional interference with employment contract against Lewis, Titus, and the SPPF; and breach of contract, promissory estoppel, good faith and fair dealing, and defamation against Hamline. Magee asserts that the additional factual allegations in the Proposed Amended Complaint dispel the defendants' arguments in support of dismissal.

A hearing on the motions was scheduled for June 13, 2012. Michelle Grant appeared on behalf of Titus. Sara Gullickson McGrane and Maurice Jenkins appeared on behalf of the Hamline Defendants. Magee's counsel notified the court immediately before the hearing that she would be unable to attend. The hearing was therefore rescheduled for June 25, 2012. The parties were advised that if counsel failed to appear at the rescheduled hearing, the matter would be taken under advisement on the papers submitted. At the June 25, 2012 hearing, Michele Grant appeared on behalf of Titus and Sara Gullickson McGrane and John Ella appeared for the Hamline Defendants. Magee's counsel failed to appear at the rescheduled hearing. No oral argument was permitted by any party and the motions were taken under advisement on the papers submitted.

**DISCUSSION**

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 permits amendment to a complaint by leave of court and mandates that leave be freely given when justice requires. Fed. R. Civ. P. 15(a). Parties do not, however, have an absolute right to amend their pleadings. *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). The granting of a motion to amend is vested in the sound discretion of the trial court. *White Consol. Indus., Inc. v. Waterhouse*, 158 F.R.D. 429, 434 (D. Minn. 1994) (citing *Ryan v. Sargent*, 969 F.2d 638, 641 (8th Cir. 1992)). Courts may deny an amendment for reasons such as "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). An amendment is futile if it fails to create claims that would withstand a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief can be granted. The complaint must plead facts that render a defendant's liability plausible—not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint need not contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. 662 at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). To withstand dismissal, the complaint must contain "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation[s]." *Id.* When reviewing a complaint on a motion to dismiss, the Court must accept all factual allegations as true and must construe those facts in the light most favorable to the nonmoving party. *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010). It must not, however, give effect to conclusory allegations of law. *Stalley ex rel. United States v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). In addition, the court may consider public records on a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). The Hamline Defendants have submitted an affidavit with exhibits along with their motions and memorandums. They argue that if such documents are not embraced by the complaint, that the Court should convert their motion to one for summary judgment. The Court will not consider evidence outside of the pleadings and confines its analysis to Plaintiff's Complaint. Therefore, conversion of their motion to dismiss to a motion for summary judgment is unnecessary.

## II.    <u>PLAINTIFF'S MOTION TO AMEND</u>

In her Proposed Amended Complaint, Magee seeks to add numerous allegations meant to cure the deficiencies defendants identified within her original Complaint. In addition to asserting additional factual allegations, Magee's Proposed Amended Complaint asserts new claims and adds a new defendant. Magee seeks to add a claim of intentional interference with contract against Defendant Titus, add claims for promissory estoppel, good faith and fair dealing, and

defamation against Defendant Hamline, and to name the SPPF as new defendant on Section 1983 and intentional breach of contract claims.

### A. Proposed Addition of Factual Allegations

Magee offers over one hundred additional allegations in her Proposed Amended Complaint. Several of these new allegations involve Titus' connections to the St. Paul Police Department ("SPPD") and the Saint Paul Police Federation ("SPPF"). (PAC ¶¶ 14-49.) Magee alleges that Titus was President of the SPPF and a 20-year veteran officer in the SPPD. (*Id.* at ¶¶ 14-15.) She alleges that Titus' letter to the editor identified himself as a St. Paul police officer and president of the SPPF (*Id.* at ¶ 19), that Titus also secured an editorial from SPPD Chief David Harrington that was published in the St. Paul Pioneer Press (*Id.* at ¶ 22), and that "Titus enjoyed a particularly close relationship to SPPD Chief Harrington." (*Id.* at ¶ 25.)

The Proposed Amended Complaint alleges that "David Titus, by and through the SPPD and [SPPF], organized an interminable and blistering campaign and boycott against Professor Magee to destroy her reputation, silence her viewpoint and to strip her of her employment with Hamline." (PAC ¶¶ 15, 17.) In the boycott resolution, Titus "indicated that he would urge SPPD Chief Harrington and the SPPD more generally to join the boycott against Hamline unless and until punitive action was taken" against Magee. (*Id.* at ¶ 23.). The boycott resolution stated that "members of the [SPPF] shall not participate in any future continued education, professional training programs or other similar that is a product of Hamline University" and that "[w]e strongly request that the police department discontinue and make no future contracts or agreements with Hamline University for educational purposes." (*Id.* at ¶¶ 31-32.) The Proposed Amended Complaint asserts, upon information and belief, that following the posting of the resolution, the SPPD "did not enter into contracts with Hamline." (PAC ¶ 32.)

Magee also alleges that Titus sent Lewis and the president of Hamline an e-mail on September 9, 2009 in which he "called their attention to his boycott and urged Hamline to take punitive action against Professor Magee and remove her from the classroom" and that Lewis responded by "informing Titus that he needed to pursue a set procedure in order to terminate Professor Magee." (PAC ¶¶ 49-50.) Magee alleges that "[t]his, among other evidence, shows a meeting of the minds." (*Id.* at ¶ 50.)

In addition to the new allegations regarding Titus and the SPPF, the Proposed Amended Complaint also contains numerous new allegations regarding Hamline's alleged breach of contract. Magee alleges that the contract at issue is the Hamline Faculty Handbook, which describes in Section 8 of the Handbook "the process that must be used" for de-tenure or termination proceedings. (PAC ¶¶ 70, 75.) Magee alleges that Hamline engaged in a "sham process" to try to "make it appear that Section 8 of the Handbook was being followed" when it instituted de-tenure proceedings against her in 2011. (*Id.* at ¶ 77.) She asserts that Hamline violated the Handbook by not following the required procedures set forth in Section 8 in various ways. (*Id.* at ¶¶ 77-123.)

Defendants argue that Magee's proposed amendment is futile because her claims still fail even with the new factual allegations. The Hamline Defendants also argue that the amendment will cause them undue prejudice and that Magee has engaged in undue delay. With respect to undue delay, although the case was originally filed over one year ago, the parties have not yet commenced discovery and a scheduling order has not been issued. Magee has not engaged in such undue delay to warrant denying her motion to amend. The Court also finds that defendants will not be unfairly prejudiced by allowing the amendment to include the new factual allegations. Defendants still have the opportunity to present their arguments for dismissal of the claims

considering the new factual allegations and have done so.  Finally, the Court finds that defendants' futility argument does not justify denying amendment to include the additional factual allegations.  Magee should be allowed the opportunity to present the factual allegations in the Proposed Amended Complaint in the context of defendants' motions to dismiss.  Therefore, Magee's motion to amend the complaint is granted to the extent the Proposed Amended Complaint adds new factual allegations in Paragraphs 7 through 123.  The Court will consider defendants' arguments on their motions to dismiss in light of the factual allegations contained in the Proposed Amended Complaint.

**B.      Proposed Claim for Violation of 42 U.S.C. § 1983 Against the St. Paul Police Federation**

In Count I of Magee's Proposed Amended Complaint, she asserts a claim for violation of 42 U.S.C. § 1983 against a new party, the St. Paul Police Federation.[1]  Magee offers no explanation for why the SPPF was not included in her initial Complaint.  Magee alleges that all defendants acted together or in conspiracy to violate her Fourteenth Amendment rights, including engaging in First Amendment retaliation, viewpoint discrimination, and violation of the right to petition the government for redress of grievances.  (PAC ¶¶ 125-26.)  Magee further alleges that "Titus acted with sufficient nexus to his St. Paul Police officer status to be clothed with the authority of his public position, acted under pretense of law, and there was sufficient nexus between the public position and the harmful conduct" and that "the private defendants acted in concert with the public defendants to effectuate a common scheme or plan, with a meeting of the minds, to violate Magee's constitutional rights."  (*Id.* at ¶¶ 125, 127.)

---

[1]      Magee's Proposed Amended Complaint also asserts violation of 42 U.S.C. § 1983 against Titus and the Hamline Defendants, as did her original Complaint.  Titus and the Hamline Defendants have moved to dismiss the Section 1983 claims against them, which is discussed below with respect to defendants' motions to dismiss.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (stating that to establish a claim under 42 U.S.C. § 1983, a plaintiff must show that she was injured either by a state actor or by a private individual acting "under color of state law"). Labor unions, including unions of public employees, are generally considered private actors outside the purview of Section 1983. *Peltonen v. Branch No. 9*, No. 05-cv-605, 2006 WL 2827239 at *23 (D. Minn. Sept. 29, 2006) (citing *Stodghill v. Service Employees Intern. Union, Local 50, AFL-CIO, CLC*, 192 F.3d 1159, 1162 (8th Cir. 1999)). Other than her general conclusory allegation that "[t]he Defendants acted under color of law (PAC ¶ 127), Magee has not specifically alleged that the SPPF acted under color of law nor offered any factual allegations to suggest that the SPPF was acting under color of law. The mere fact that the SPPF represents police officers does not make the union itself a public actor. *See, e.g.*, *Dorcely v. Wyandanch Union Free Sch. Dist.*, No. 06-CV-1265 (DRH)(AKT), 2007 WL 2815809 at *4 (E.D.N.Y. Sept. 25, 2007).

Although the union is a private actor, there are occasions where a private party such as a union may be liable under Section 1983 for conspiring with public officials "to violate a private citizen's right to freedom of speech under the First Amendment, just as it may be held liable for conspiring to violate other constitutional rights." *Peltonen*, 2006 WL 2827239 at *23 (citing *Dossett v. First State Bank,* 399 F.3d 940, 950 (8th Cir. 2005)). A private entity's action can constitute state action when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n.,* 531 U.S. 288, 295 (2001)

(quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)).  There must be a 'close

nexus' not merely between the state and the private party, but between the state and the alleged

deprivation itself.  *See Brentwood*, 531 U.S. at 295.  A private entity may be considered a state

actor if it 'has acted together with or has obtained significant aid from state officials' in

furtherance of the challenged action.  *Lugar v Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

To establish a claim against a private actor under Section 1983, there must be "a mutual

understanding, or a meeting of the minds, between the private party and the state actor."  *Miller

v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (quoting *Mershon v. Beasley,* 994 F.2d 449,

451 (8th Cir.1993)).

Magee asserts that all defendants acted in conspiracy, with a meeting of the minds, to

deprive her of constitutionally-guaranteed rights.  In her Proposed Amended Complaint, Magee

alleges that Titus' letter to the editor identified himself as president of the SPPF and that Titus

through the SPPF, declared a boycott against Hamline until it took punitive action against

Magee.  (PAC ¶¶ 19, 23.)  Magee alleges that the SPPF's boycott resolution urged the SPPD to

join the boycott against Hamline and that "[u]pon information and belief Titus was successful in

obtaining assistance from" police officers or the SPPD to boycott Hamline.  (PAC ¶¶ 23-24.)

But Magee has not alleged facts supporting a conspiracy or meeting of the minds between the

SPPF and any public actors.  The Proposed Amended Complaint contains no factual allegations

of a mutual understanding between the SPPF and the police department concerning an unlawful

objective to violate Magee's constitutional rights.  *See White v McKinley*, 519 F.3d 806, 816 (8th

Cir. 2008).  Magee's allegation that the SPPF boycott was "effectuated by numerous public

police officers" is insufficient to render her claim against the SPPF plausible, as it does not

acknowledge the distinction between police officers acting in their official capacity and in their

personal lives.  *See Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1046 (D. Minn. 2010).

Magee's assertion that Titus acted with sufficient nexus to his police officer status to act under

color of law is a conclusory allegation of law that is not entitled to an assumption of truth.

*Delgado-O'Neil v. City of Minneapolis*, No. 08-4924, 2010 WL 330322 (D. Minn. Jan. 20, 2010)

*aff'd*, 435 F. App'x 582 (8th Cir. 2011).

Because the SPPF is a private entity not liable under 42 U.S.C. § 1983 and Magee has not

alleged facts supporting her conclusory allegation that defendants acted under "color of law" or

that the SPPF acted in concert with public officials, Magee's proposed Section 1983 claim

against the SPPF could not survive a Rule 12(b)(6) motion to dismiss.  Allowing the amendment

would be futile and is denied.

### C.     Proposed Claim for Intentional Interference with Employment Contract Against David Titus and the St. Paul Police Federation

In Count II of her Proposed Amended Complaint, Magee asserts claims for intentional

interference with contract against Titus and the SPPF.[2]  Magee alleges that Titus and the SPPF

"knew about Magee's employment contract with Hamline" and that they "intentionally induced

Hamline to suspend and terminate Magee, in a manner that he [sic] knew violated Magee's

contract."  (PAC ¶ 131.)  Titus argues that Magee fails to allege facts to support a claim that he

knew of the contract or procured its breach.

To successfully state a claim of intentional interference with contract, a plaintiff must

allege facts supporting the following elements: "(1) the existence of a contract; (2) the alleged

wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without

justification; and (5) damages."  *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 795 F. Supp. 2d 874,

---

[2]     Magee's Proposed Amended Complaint also retains an Intentional Interference with Employment Contract claim against Lewis, which is discussed below with respect to the Hamline Defendants' motion to dismiss.

878 (D. Minn. 2011) *aff'd*, 678 F.3d 659 (8th Cir. 2012); *see also Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn. 1982).

Magee alleges in conclusory fashion that Titus and the SPPF "knew about Magee's employment contract with Hamline." Magee alleges facts supporting an allegation that Titus knew that she worked at Hamline, but there are no facts suggesting that Titus knew that Magee had a contract with Hamline rooted in the policies set forth in the Faculty Handbook.

In addition, Magee has not sufficiently alleged that Titus and the SPPF intentionally procured the breach of her alleged contract with Hamline. The claimed breach of contract at issue in this case is Hamline's alleged failure to follow the procedures set forth in the Faculty Handbook for de-tenuring a faculty member. Magee offers no facts to support an allegation that Titus or the SPPF took any action to intentionally cause Hamline not to follow these Handbook procedures. The only actions Magee alleges that Titus and the SPPF took directed at Hamline appear to be that "Titus, by and through the SPPF, declared a boycott against Hamline until it took punitive action against Professor Robin Magee for her published commentary about police" and that Titus sent an e-mail to Lewis urging Hamline to "take punitive action against Professor Magee and remove her from the classroom." (PAC ¶¶ 23, 49.) These alleged facts are unrelated to the process and procedures used by Hamline related to her discharge. Magee has not pleaded facts from which the Court could conclude that her claim that Titus and the SPPF intentionally procured Hamline's alleged breach of the Faculty Handbook procedural provisions is plausible.

Because she has failed to allege facts to support the necessary elements of intentional interference with contract, her proposed claim could not withstand a Rule 12(b)(6) motion to dismiss. Allowing the amendment would be futile and therefore will be denied.

**D.      Proposed Claim for Promissory Estoppel against Hamline University**

Count IV of Magee's Proposed Amended Complaint asserts a cause of action against Hamline for promissory estoppel.  Magee asserts that "[i]f the employment contract described in this complaint is found not to be a contract, Magee alleges in the alternative that clear and definite promises were made to her in the language of the Handbook" and that she reasonably relied on those promises.  (PAC ¶¶137-39.)  Hamline argues that the claim is futile because Magee has not sufficiently identified a clear and definite promise.

Promissory estoppel is an equitable doctrine that "implies a contract in law where none exists in fact."  *Martens v. Minn. Mining & Manufacturing Co.*, 616 N.W.2d 732, 746 (Minn. 2000).  The elements of a claim for promissory estoppel are: (1) the defendant made a clear and definite promise; (2) the defendant expected or reasonably should have expected the promise to induce definite and substantial action by the plaintiff; (3) the promise induced such action; and (4) the promise must be enforced to avoid injustice.  *See Ruud v. Great Plains Supply, Inc.* 526 N.W.2d 369, 372 (Minn. 1995).

Here, Magee has not sufficiently pleaded the elements of a promissory estoppel claim. Although Magee identifies "the language of the Handbook," her reference to the Handbook as a whole is vague and insufficient to put Hamline on notice as to the "clear and definite promises" at issue.  Further, Magee has not alleged how she relied on any promises or how Hamline intended to induce reliance.  Finally, Magee has not even pleaded the final element of a promissory estoppel claim, that the promises must be enforced to avoid injustice.  Because Magee's allegations amount to only an incomplete recitation of the elements of the cause of action, the promissory estoppel claim would not survive a motion to dismiss.  Amendment to add the claim would be futile and is denied.

### E. Proposed Claim for Violation of Duty of Good Faith and Fair Dealing against Hamline University

Count V of Magee's Proposed Amended Complaint asserts a cause of action against Hamline for "Good faith and fair dealing." Magee asserts that Hamline had a duty to act in good faith in performance of its contract with her and that Hamline breached that duty by acting dishonestly in creating a "sham and pretextual process" with respect to the termination proceedings. (PAC ¶¶ 143-48.) Hamline argues that the proposed claim is futile because it is not recognized under Minnesota law.

Minnesota law does not recognize an implied duty of good faith and fair dealing in employment contracts. *Brozo v. Oracle Corp.* 324 F.3d 661, 668 (8th Cir. 2003) (citing *Hunt v. IBM Mid. Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 858 (Minn. 1986); *Singleton v. Christ the Servant Evangelical Lutheran Church,* 541 N.W.2d 606, 613 (Minn. Ct. App. 1996), *cert. denied,* 519 U.S. 870 (1996)). Magee's claim that Hamline breached a duty of good faith and fair dealing therefore fails as a matter of law. Because the claim is futile, amendment to add Count V, "Good faith and fair dealing," is denied.

### F. Proposed Claim for Defamation against Hamline University

Count VI of Magee's Proposed Amended Complaint, although titled "Good faith and fair dealing," asserts a claim for defamation by self-publication against Hamline. Magee alleges that "the basis for discharging Magee as articulated in the faculty jury determination was not the real reason (and was pretext or sham)," that "Magee would need to articulate the faculty jury's determination to any prospective employers," and "Hamline is therefore liable for defamation by self-publication." (PAC ¶¶ 149-52.) Hamline argues that the proposed defamation claim is futile for multiple reasons, including that the claim has not been pleaded with sufficient particularity and that Magee cannot establish publication of the statement to a third party.

"To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919-20 (Minn. 2009) (quoting *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn. 1980)). "A statement is defamatory when it 'tend[s] to injure the plaintiff's reputation and expose the plaintiff to public hatred, contempt, ridicule, or degradation.'" *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 573 (Minn. 1987) (quoting *Church of Scientology of Minnesota v. Minnesota State Medical Ass'n Foundation*, 264 N.W.2d 152, 155 (Minn. 1978)). Defamation which affects a "plaintiff in his business, trade, profession, office or calling," is defamation per se and is "thus actionable without any proof of actual damages." *Stuempges*, 297 N.W.2d at 255.

"Generally, there is no publication where a defendant communicates a statement directly to a plaintiff, who then communicates it to a third person." *Lewis v. Equitable Life Assurances Soc'y of the United States*, 389 N.W.2d 878, 886 (Minn. 1986) (citation omitted). However, the Minnesota Supreme Court has recognized an exception to this rule in circumstances of compelled self-publication. *Id.* at 888. The doctrine of compelled self-publication provides that the originator of the defamatory statement is liable for damages caused by the statement, where the originator knew or should have known that the defamed person would be compelled in certain circumstances to publish the statement. *Id.*

A plaintiff must plead and prove a defamation claim with a certain degree of specificity, including pleading who made the alleged defamatory statement, to whom the statements were made, and where the statements were made. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1011 (8th Cir. 2005) (citation omitted); *Pinto v. Int'l Set, Inc.*, 650 F. Supp. 306, 309 (D. Minn. 1986).

Minnesota law generally requires that in defamation suits, the precise words complained of be set forth "verbatim." *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 326 (Minn. 2000) (citing *American Book Co. v. Kingdom Publ'g Co.*, 73 N.W. 1089, 1090 (1898)). "[F]ederal courts favor specific pleading of defamation claims because 'knowledge of the exact language used is necessary to form responsive pleadings.'" *Bauer v. Ford Motor Credit Co.*, No. Civ. 00-389, 2000 WL 34494820, at *3 (D. Minn. June 27, 2000) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.3d 692, 699 (8th Cir. 1979)).

The allegations contained in Magee's Proposed Amended Complaint do not plead her defamation claim with sufficient particularity. Although Magee asserts that the statements complained of "are those found in the Hearing Committee determination," this allegation is not sufficient to allow Hamline to prepare responsive pleadings. The allegation does not identify what portion or language of the Hearing Committee determination is at issue.

In addition, Magee's Proposed Amended Complaint does not adequately allege publication of the statement, which is an essential element of her claim. Magee relies on the doctrine of compelled self-publication and asserts that she "would need to articulate the faculty jury's determination to any prospective employers," but she does not allege that she has actually been compelled to publish the statement to anyone. The Proposed Amended Complaint contains no facts regarding any third parties to whom the statement has been published.

Because the proposed defamation claim in its current form is not adequately pleaded in these respects, it would not survive a Rule 12(b)(6) motion to dismiss. Therefore, the proposed claim is futile and amendment to add Count VI, defamation by self-publication, is denied.[3]

---

[3] In the Introduction of Magee's Proposed Amended Complaint, she states that she is bringing a claim of intentional infliction of emotional distress. (PAC at p. 1.) However, that cause of action is mentioned nowhere else in the Proposed Amended Complaint. Therefore, the

II.    **MOTIONS TO DISMISS**

Both Titus and the Hamline Defendants move to dismiss Count I of Magee's Complaint for violation of 42 U.S.C. § 1983. The Hamline Defendants also move to dismiss state law claims for breach of contract and intentional interference with contract.

A.    **VIOLATION OF 42 U.S.C. § 1983**

Having granted Magee's motion to amend to assert additional factual allegations, the Court will consider the allegations contained in the Proposed Amended Complaint in ruling on defendants' motions to dismiss the Section 1983 claims. Magee asserts that with the additional facts, she has stated a claim to relief that is plausible on its face that Titus and the Hamline Defendants violated Section 1983 by engaging in joint activity with a meeting of the minds to deprive her of her constitutional rights. Titus argues that even with the additional allegations, Magee has not sufficiently alleged that he acted under color of law or in concert with state officials. Similarly, the Hamline Defendants argue that Magee has not sufficiently alleged that they acted in concert with state officials.

As discussed above, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant in a Section 1983 suit "acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 49-50 (internal citation omitted). As noted in *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999), "the under-color-of-state-law element of § 1983

---

Court does not consider the motion to amend to include a claim for intentional infliction for emotional distress. If Magee did actually intend to move to amend to assert that claim, it would fail because she has not even pleaded the elements of the cause of action.

excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

"Although Section 1983 can be used only to remedy deprivation of rights done under the color of law, a private actor can be liable 'under § 1983 for conspiring with state officials to violate a private citizen's right[s]. . . .'" *White v. McKinley*, 519 F.3d 806, 815-16 (8th Cir. 2008) (quoting *Dossett v. First State Bank,* 399 F.3d 940, 950 (8th Cir. 2005)). In such a case, a plaintiff must establish that the private party was a "willful participant in joint activity with the State or its agents," which deprived the plaintiff of a constitutional right. *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558-59 (8th Cir. 1989) (quoting *Adickes v. S.H. Kres & Co.*, 398 U.S. 144 (1970)). As discussed above, a Section 1983 conspiracy claim requires "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (quoting *Mershon v. Beasley,* 994 F.2d 449, 451 (8th Cir.1993)).

### 1. 42 U.S.C. § 1983 Claim against Titus

With regard to the actions of police officers, "it is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion)). As per *Ramirez–Peyro v. Holder*, 574 F.3d 893 (8th Cir. 2009), for an official to have acted under color of law, a sufficient nexus must exist between that official's public position and his harmful conduct. The existence of such a nexus is determined by consideration of the following factors:

> (1) whether the officer was on duty; (2) whether the officer wore a uniform or bore other indicia of state authority such as a badge or gun; (3) whether the officer had access to the victim because of his position as a public official; (4) whether the officer's motivation in acting was personal or official; and (5) whether the officer identified himself as a police officer or claimed to act in a police capacity.

*Ramirez–Peyro v. Holder*, 574 F.3d 893 at 901; *see also Lawrence v. City of St. Paul,* 740 F. Supp. 2d 1026, 1047 (D. Minn. 2010).

Magee claims that "Titus acted with sufficient nexus to his St. Paul Police officer status to be clothed with the authority of his public position, acted under pretense of law, and there was sufficient nexus between the public position and the harmful conduct." (PAC ¶ 125.) But as discussed above, that is a legal conclusion that is not to be granted an assumption of truth. *Delgado-O'Neil v. City of Minneapolis*, No. 08-4924, 2010 WL 330322 (D. Minn. Jan. 20, 2010) *aff'd*, 435 F. App'x 582 (8th Cir. 2011)*; see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Magee appears to rely heavily upon Titus' employment as a police officer and connection to the SPPF to support her claim that Titus was acting under color of state law. But Magee does not allege facts supporting the presence of the relevant factors under *Ramirez–Peyro* in her Proposed Amended Complaint. Magee does not allege that Titus undertook any actions while on duty or while wearing a uniform, badge, or gun. Magee makes no claims that Titus had access to her because of his position as a public official. In fact, Magee acknowledges that Titus had access to her opinions because she published them in a local newspaper. Magee does not allege that Titus' motivation was official rather than personal. Although she alleges that Titus identified himself as a police officer in his letter to the editor, this fact alone is not enough to support a claim that he was acting under color of law to deprive Magee of her rights. Magee does not allege facts sufficient to support her claim that Titus' actions were made possible by his position within law enforcement or undertaken while acting in an official capacity or while exercising responsibilities pursuant to state law. "Police officers, like everyone else, have personal lives, and what they do in their personal lives is not done under color of state law." *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1046 (D. Minn. 2010). The conduct alleged

by Titus requires no state authority; a private actor can respond to a published commentary or contact a University regardless of whether he works as a police officer. Magee's Complaint fails to allege the existence of a sufficient nexus between Titus' public position and his alleged conduct to make plausible a claim he was acting under color of law.

In addition, Magee does not allege sufficient facts to support a claim that Titus was working in joint activity with state officials to deprive Magee of a constitutional right. Magee asserts that Titus had a close relationship with SPPD Chief Harrington. (PAC ¶ 24.) But suggesting that two people had the opportunity to conspire "is obviously not sufficient to 'nudge' a conspiracy claim 'across the line from conceivable to plausible.'" *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010) (quoting *Twombly*, 550 U.S. at 570)). Magee also alleges that "[u]pon information and belief Titus was successful in obtaining assistance from [] police officers and/or the Department" to boycott Hamline and that "upon information and belief. . .from that point forward the [SPPD] did not enter into contracts with Hamline." (PAC ¶¶ 32, 127.) But Magee has not alleged that the SPPD previously entered into contracts with Hamline or that the SPPD failed to enter into any particular contract with Hamline as part of a scheme with Titus to deprive Magee of constitutionally-guaranteed rights. Further, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. . . ." *Id.* at 1050-51 (quoting *Twombly*, 550 U.S. at 556-57)). There are no specific factual allegations suggesting that Titus conspired with the City of St. Paul or the SPPD.[4]

_____

[4]     Although Magee argues that "[w]e are clearly dealing with a boycott by public officials of the School" like in *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2002), the facts of *Kinney* are clearly distinguishable from the facts pleaded by Magee. In *Kinney*, police chiefs and sheriffs in

To bolster her claim that Titus worked in concert with state officials, Magee asserts that Titus operated "by and through the [SPPF]" when it allegedly declared a boycott against Magee. (PAC ¶ 17.) But, as discussed above, the SPPF is a police union, not a state actor. Titus' involvement with the police union does not constitute concerted efforts with state officials. In sum, Magee's complaint "does not contain 'enough factual matter (taken as true) to suggest that an agreement was made" between Titus and a state actor. Finally, as discussed below, Magee has failed to plead facts sufficient to make plausible a claim that Titus conspired with the Hamline Defendants.

Magee's PAC fails to cure the deficiencies identified in her original complaint. Despite numerous additional allegations, Magee offers insufficient facts to raise a right to relief above the speculative level that Titus deprived her of her constitutional rights while working under color of state law or in concert with state officials. Without sufficient facts to support these elements, Magee's Section 1983 claim does not withstand Rule 12(b)(6) scrutiny. The Court recommends that Magee's claim against Titus be dismissed.

2.    42 U.S.C. § 1983 Claim against Hamline Defendants

In her Proposed Amended Complaint, Magee alleges that Hamline and Lewis "were willful participants in Titus' and the SPPF's boycott and other retaliation against Magee for her speech/viewpoint." (PAC ¶ 125.) Thus, Magee brings claims against Hamline and Lewis, although they are private actors, for participating in joint activity with Titus, who she alleges is a

---

several counties allegedly agreed not to enroll their student-officers in classes taught by two instructors at the local police academy where the police departments had traditionally sent their officers for official training, purportedly in retaliation for the instructors' unfavorable expert witness testimony. The plaintiff instructors brought suit against the individual police chiefs and sheriffs and the municipalities involved. The police chiefs' and sheriffs' actions in *Kinney* were performed in the course of their official duties and there was not even a question in the case of whether the actions were undertaken under "color of law." Rather, the question was whether the individual police chiefs and sheriffs were entitled to qualified immunity.

state actor.  (*Id.* at ¶¶ 125, 127.)  Magee argues that e-mail communications between Titus and Lewis, specifically an e-mail from Titus to Lewis in which Titus "called attention to his boycott and urged Hamline to take punitive action against Professor Magee and remove her from the classroom" and a reply from Lewis to Titus "informing Titus that he needed to pursue a set procedure in order to terminate Professor Magee" (*see* PAC ¶¶ 49-50), are sufficient to state a plausible claim of joint action between Titus and the Hamline Defendants.

In order to hold a private party liable under Section 1983, a plaintiff must establish that the private party was a "willful participant in joint activity with the State or its agents" in depriving the plaintiff of his constitutional rights.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The Court has already determined that the Proposed Amended Complaint does not state sufficient facts to make plausible a claim that Titus or the SPPF were acting under color of state law.  Because Magee has not successfully pleaded a Section 1983 claim against either Titus or the SPPF as state actors, a claim that the Hamline Defendants violated Section 1983 by acting in joint activity with Titus or the SPPF similarly fails.  For this reason, Magee's Proposed Amended Complaint does not sufficiently plead a claim for violation of Section 1983 against the Hamline Defendants.

Even if Magee had pleaded facts from which the Court could conclude that a Section 1983 claim against Titus or the SPPF was plausible, her claim against the Hamline Defendants would still fail because she has not adequately alleged joint action of the Hamline Defendants in conspiracy with Titus or the SPPF to violate Magee's rights.  The 2009 e-mail exchange between Titus and Lewis is alone insufficient to create a plausible claim that the Hamline Defendants conspired with Titus or the SPPF to terminate Magee's employment.  *See, e.g.*, *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010).  Magee has not otherwise alleged a

factual basis to support a willful, joint conspiracy among the defendants or between any defendant and a state actor to violate Magee's constitutional rights. Magee does not allege that Titus was involved in any way in the de-tenure proceedings that took place in 2011. Her conclusory allegations that the Hamline Defendants "were willful participants" in Titus' "retaliation against Magee" are insufficient to plead a claim under Section 1983. Because Magee fails to plead facts to establish any plausible claim that the defendants joined together in a conspiracy, with a mutual understanding and meeting of the minds, to deprive Magee of constitutionally-guaranteed rights, the Court recommends that her Section 1983 claim be dismissed.

### C.    STATE LAW CLAIMS

The Hamline Defendants have also moved to dismiss the state law claims against them in the original Complaint: Count II (Intentional Interference with Employment Contract against Lewis) and Count III (Breach of Employment Contract against Hamline). However, having recommended dismissal of Count I (Violation of 42 U.S.C. § 1983), the only claim that falls within the court's original jurisdiction, it is recommended that the court decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (2006); *Hervey v. County of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008); *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005). The Court expresses no opinion on the arguments raised by the Hamline Defendants as to the remaining claims. The Court recommends that Counts II and III be dismissed without prejudice.

## <u>CONCLUSION</u>

Based upon the record, memoranda, and oral arguments,

I. **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint [Docket No. 32] is **GRANTED IN PART AND DENIED IN PART as follows**:

    a. The motion to add the factual allegations contained in Paragraphs 7 through 123 of the Proposed Amended Complaint is **GRANTED**;

    b. The motion is **DENIED** in all other respects, including with respect to the addition of the following claims:

        i. Count I (Violation of 42 U.S.C. § 1983) against the St. Paul Police Federation;

        ii. Count II (Intentional Interference with Employment Contract) against David Titus and the St. Paul Police Federation;

        iii. Count IV (Promissory Estoppel), Count V (Good faith and Fair dealing), and Count VI (Defamation) against Trustees of the Hamline University, Minnesota.

    c. Plaintiff shall file an amended complaint consistent with this order on or before October 22, 2012.

II. **IT IS HEREBY RECOMMENDED** that Defendant David Titus' Motion to Dismiss [Docket No. 20] be **GRANTED** and that Plaintiff's Count I (Violation of 42 U.S.C. § 1983) against David Titus be dismissed.

III. **IT IS HEREBY RECOMMENDED** that the Hamline Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 24] be **GRANTED as follows**:

a. That Count I (Violation of 42 U.S.C. § 1983) against the Trustees of the Hamline University and Donald Lewis be dismissed.

b. That Count II (Intentional Interference with Employment Contract against Donald Lewis) and Count III (Breach of Employment Contract against the Trustees of the Hamline University) be dismissed without prejudice.


Dated:  _October 15, 2012_____          _s/ Arthur J. Boylan_____
                                            Chief Magistrate Judge Arthur J. Boylan
                                            United States District Court

       Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before  _October 29__, 2012.