# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBIN MAGEE, | Civil No. 11-949 (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION & ORDER** |
| TRUSTEES OF THE HAMLINE UNIVERSITY, MINNESOTA; DONALD LEWIS, *in his individual capacity*; DAVID TITUS, *in his individual capacity*; and JOHN DOES, 1-5, | |
| Defendants. | |

Albert T. Goins, Sr., **GOINS LAW OFFICES, LTD.**, 301 Fourth Avenue, Suite 378, Minneapolis, MN  55415; and Damon L. Ward, **WARD LAW GROUP**, 301 Fourth Avenue South, Suite 378N, Minneapolis, MN  55415, for plaintiff.

Maurice G. Jenkins, **JACKSON LEWIS LLP**, 2000 Town Center, Suite 1650, Southfield, MN  48075; V. John Ella, **JACKSON LEWIS LLP**, 225 South Sixth Street, Suite 3850, Minneapolis, MN  55402; Sara Gullickson McGrane and Grant T. Collins **FELHABER LARSON FENLON & VOGT, PA**, 220 South Sixth Street, Suite 2200, Minneapolis, MN  55402, for defendants Trustees of the Hamline University, Minnesota and Donald Lewis.

David L. D. Faith and Michelle S. Grant, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for defendant David Titus.

This action arises out of the termination of Plaintiff Robin Magee's employment by the Hamline University School of Law.  The matter came before United States Magistrate Judge Arthur J. Boylan on Magee's motion to amend her complaint.

Additionally, Defendant David Titus and Defendants Trustees of the Hamline University ("Hamline") and Donald Lewis (collectively, the "Hamline Defendants") filed motions to dismiss the complaint for failure to state a claim.   In a October 15, 2012 Order and Report and Recommendation ("R&R"), the Magistrate Judge granted Magee's motion to amend her complaint in part, allowing her to add new factual allegations, but denied Magee's motion to the extent it sought amendment to add a new defendant and new claims because such amendments would be futile.   The Magistrate Judge also recommended that the Court grant Defendants' motions to dismiss Magee's federal claims and decline to exercise supplemental jurisdiction over Magee's remaining state law claims.   Before the Court are Magee's and Lewis's objections to the October 15, 2012 Order and R&R.   For the reasons explained below, the Court will affirm the Magistrate Judge's order, and adopt the R&R in its entirety.

## BACKGROUND[1]

## I.    MAGEE'S TERMINATION

Plaintiff Robin Magee was a tenured law professor at Hamline University School of Law.  (Compl. ¶ 1, Apr. 15, 2011, Docket No. 1.)  Magee taught classes on policing, covering topics such as police misconduct and race issues in the criminal justice system. (*Id.* ¶¶ 8-9.)

---

[1] The Court recites the facts only to the extent necessary to rule on the present objections. A more complete recitation of the facts can be found in the R&R.

In 2007, Magee wrote a letter to the editor of the St. Paul Pioneer Press criticizing a Ramsey County court's decision not to investigate allegations of racism related to the jury in a high-profile case involving the alleged killing of a St. Paul police officer.  (*Id.* ¶ 10.)  Magee's letter was published in the Pioneer Press.  (*Id.*)  Defendant David Titus, a police officer with the City of St. Paul wrote a response to Magee's letter that was published on the St. Paul Police Federation ("SPPF")[2] website.  (*Id.* ¶ 11.)  In his response, Titus questioned Magee's "fitness to teach" and stated "I hope Professor Magee confines her race baiting and cop-hating to her newspaper submissions and keeps it out of the classroom."  (*Id.*)  Titus then contacted Hamline, allegedly with the intent to have Magee fired in retaliation for her critical editorial.  (*Id.* ¶ 12.)

After the publication of Titus' response, Defendant Donald Lewis became Dean of the Hamline University School of Law.  (*Id.* ¶ 13.)  Lewis allegedly began working together with Titus and other St. Paul police officers to terminate Magee.  (*Id.*)

In 2009, Magee was charged with multiple counts of state tax law violations, and was suspended from her teaching position at Hamline.  (Compl. ¶ 14; Proposed Am. Compl. ¶ 47, May 14, 2012, Docket No. 36.)  After she was convicted of misdemeanor tax law violations in February 2011, Hamline initiated termination proceedings against Magee.  (Compl. ¶¶ 16-17.)  Magee contends that this termination was a concerted effort between Lewis and St. Paul police, and ultimately effected "to please police and to

---

[2] The SPPF is a labor union representing St. Paul police officers.  Titus was the SPPF president during the time period referenced in the complaint.  (Proposed Am. Compl. ¶¶ 14-15, May 14, 2012, Docket No. 36.)

prevent her from teaching about police misconduct, and otherwise to restrain her speech, and as retaliation for past speech criticizing government." (*Id.* ¶¶ 17-18.)

## II.   PROCEDURAL HISTORY

On April 15, 2011, Magee filed a complaint alleging violations of 42 U.S.C. § 1983 by the Hamline Defendants and Titus. (*Id.* ¶¶ 19-24.) Magee alleges that Defendants retaliated against her because she had "exercised her right to free speech, to criticize government," and violated her First Amendment right to petition the government for redress of her grievances. (*Id.* ¶ 21.) Magee also brings claims for intentional interference with contract against Lewis, and a claim for breach of contract against Hamline. (*Id.* ¶¶ 25-31.)

On April 20, 2012, Titus and the Hamline Defendants filed motions to dismiss the complaint under Federal Rule Civil Procedure 12(b)(6) for failure to state a claim. (Def. Titus' Mot. to Dismiss, Apr. 20, 2012, Docket No. 20; Hamline Defs.' Mot. to Dismiss, Apr. 20, 2012, Docket No. 24.)

On May 11, 2012, Magee filed a motion requesting leave to amend her complaint. (Mot. to Amend, May 11, 2012, Docket No. 32.) On May 14, 2012, Magee filed a copy of her proposed amended complaint. (Ex., May 14, 2012, Docket No. 36.) Magee's proposed amended complaint adds almost one hundred new factual allegations. (*Id.*) The proposed amended complaint also adds the St. Paul Police Federation ("SPPF") as a defendant, and alleges a violation of 42 U.S.C. § 1983 as well as intentional interference with an employment contract against the SPPF. (*Id.* ¶¶ 124-32.) Additionally, the proposed amended complaint asserts new causes of action against the existing

defendants, including intentional interference with an employment contract against Titus (*id.* ¶¶ 131-32), and promissory estoppel, breach of a duty of good faith and fair dealing, and defamation against Hamline, (*id.* ¶¶ 133-52).

## ANALYSIS

## I.   MOTIONS TO DISMISS

### A.   Standard of Review

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Here, the Magistrate Judge issued a recommendation applying Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility[,]" and therefore must be dismissed. *Id.* (internal quotation marks omitted). Although the Court accepts the complaint's factual allegations as true, it is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).[3]

### B.    Section 1983 Claims

"Section 1983 imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982)).   Therefore, in order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).   The Hamline Defendants and Titus both bring motions to dismiss Magee's claims for

---

[3] The Magistrate Judge granted Magee's motion to amend her complaint to the extent it sought to add new factual allegations.   Therefore, in recommending that the Court grant Defendants' motions to dismiss, the Magistrate Judge properly considered the new factual allegations contained in Magee's proposed amended complaint.   The Court will do the same.   In her objections, Magee suggests that the Magistrate Judge "did not give full legal effect" to her new factual allegations.   (Pl.'s Objections at 2, Oct. 29, 2012, Docket No. 61.)   But Magee fails to identify any factual allegation that the Magistrate Judge should have but failed to consider in reaching his conclusions on the motions to dismiss.   The Court reviews *de novo* only those portions of the R&R to which the complaining party has lodged "**specific** written objections." Fed. R. Civ. P. 72(b)(2) (emphasis added).   The Magistrate Judge carefully considered the factual allegations in Magee's proposed amended complaint, therefore the Court will overrule Magee's objection.

violation of 42 U.S.C. § 1983, arguing that they are not actors under color of state law for purposes of § 1983.

### 1.      Section 1983 claim against Titus

"[A] public employee acts under color of law when he '[e]xercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Johnson v. Phillips*, 664 F.3d 232, 239-40 (8th Cir. 2011) (quoting *West*, 487 U.S. at 49)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) (internal quotation marks omitted). A defendant is acting under color of state law if he "acts or purports to act in the performance of official duties, even if he oversteps his authority and misuses power." *Johnson*, 664 F.3d at 240. But "[a]cts of officers in the ambit of their personal pursuits are plainly excluded" from the scope of § 1983 liability. *Dossett*, 399 F.3d at 949 (8th Cir. 2005) (alteration in original) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)).

To determine whether an official is acting under color of law, the Court "look[s] to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900 (8th Cir. 2009). "Absent any actual or purported relationship between the officer's conduct and his duties as a police officer, the officer cannot be acting under color of state law." *Roe*, 128 F.3d

at 1216.  In determining whether a sufficient nexus exists in the context of a § 1983 claim brought against a police officer, the Court considers a number of factors, including whether the officer was on duty and in uniform, the motivation for the officer's actions, whether the officer had access to the plaintiff because of the officer's position, and whether the officer invoked his status or threatened to use his official authority in the future.  *See Ramirez-Peyro*, 574 F.3d at 901.  Where, as here, the plaintiff brings § 1983 claims against a public official based upon the official's reaction to a newspaper editorial, in determining whether the official acted under color of state law, the Court must examine "the nature of [the official's] response to the publication, rather than the content of the publication itself."  *See How v. City of Baxter Springs, Kan.*, 217 F. App'x 787, 793 (10th Cir. 2007).

After considering the *Ramirez-Peyro* factors, the Court concludes that Magee's proposed amended complaint does not sufficiently plead that Titus was acting under color of state law when he allegedly violated her constitutional rights.  Magee has not alleged that Titus was on duty or in uniform when he undertook any of the allegedly wrongful actions.  With respect to Titus' motivation for allegedly violating Magee's constitutional rights, Magee argues that Titus was offended by Magee's public commentary about a case involving a police officer.  (Proposed Am. Compl. ¶ 16.)  Although Magee's editorial discussed police conduct, the Court must examine the nature of Titus' response to the publication, not the content of the editorial itself.  *See How*, 217 F. App'x at 793.  Magee has not pleaded facts indicating that Titus responded to her editorial in his role as a police officer, rather than as a private citizen with opinions about race issues in policing

and the criminal justice system.  Similarly, Magee's proposed amended complaint does not indicate that Titus had access to her and her views because of his position as a police officer.  Rather, Magee published her views in a newspaper available to any member of the public.  Finally, the complaint does not adequately allege that Titus invoked his status when allegedly violating Magee's rights.  In his response to Magee's editorial, Titus did specifically identify himself as a St. Paul police officer and the president of the St. Paul Police Federation.  (Proposed Am. Compl. ¶ 19.)  But the Magistrate Judge correctly found that this fact alone is insufficient to show that Titus was acting under color of state law.  Magee's complaint does not plead facts which indicate that Titus "wore a badge of state authority" when he responded to her editorial.  *See How*, 217 F. App'x at 793. Moreover, the heart of Magee's constitutional claim is that Titus organized a boycott of Hamline to encourage Hamline to fire Magee in retaliation for her editorial.  (*Id.* ¶¶ 22-23.)  The proposed amended complaint does not, however, allege that Titus used his position as a police officer to influence his alleged interactions with the Hamline defendants.[4]

In her objections, Magee merely repeats the facts outlined in her proposed amended complaint.  Magee identifies several facts in her proposed amended complaint that she contends show that Titus was acting under color of state law in allegedly

_____

[4] *See, e.g.*, *Rossignol v. Voorhaar*, 316 F.3d 516, 524-26 (4th Cir. 2003) (finding that defendant police officers were acting under color of state law when they "use[d] their positions in the Sheriff's Department to ensure that they would not be prosecuted" for their retaliatory conduct to silence plaintiff's speech that had been critical of defendants' "fitness for public office[,]" and defendants' "identities as state officers played a role" in allowing them to successfully violate the constitutional rights of plaintiff).

violating Magee's First Amendment rights.  Magee argues that Titus was a police officer and the President of the SPPF.  (Proposed Am. Compl. ¶¶ 14-15.)  These facts show only that Titus was a police officer, and say nothing about whether he was acting under color of state law when he allegedly violated Magee's rights by conspiring to have her terminated.  *See Ottman v. City of Independence, Mo.*, 341 F.3d 751, 762 (8th Cir. 2003) ("Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." (internal quotation marks omitted)).

The other allegations identified by Magee in her objections similarly say nothing about whether Titus was acting in his role as a police officer **when** he allegedly violated her constitutional rights.  *See Ottman*, 341 F.3d at 761-62 ("[A] clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights.").  For example, Magee alleges generally that Titus was able to influence police policy through his position as an officer and president of the SPPF.  (Proposed Am. Compl. ¶ 15.)  That Titus may have been able to influence policy says nothing about whether Titus did so with respect to the present allegations.  Additionally, the proposed amended complaint states that "David Titus as a police officer and also in conjunction with his role as President of the St. Paul Police Federation" organized other police officers and his associates "to inundate the Hamline President's Office with calls and other communications complaining about Professor Robin Magee's commentary and demanding that she be removed from her tenured faculty position at the University for her speech and her viewpoint."  (*Id.* ¶ 18; *see also id.* ¶¶ 17, 125.)  Although the

complaint states Titus acted "as a police officer" "by and through" the St. Paul Police Department, these are simply "legal conclusion[s] couched as a factual allegation," *see Twombly*, 550 U.S. at 555 (internal quotation marks omitted), that the Court cannot use as a basis to draw the reasonable inference that Titus is liable for the misconduct alleged. Magee has not pleaded facts which indicate that Titus' reaction to Magee's editorial was made possible by, or undertaken in, his position as a police officer.

Magee also appears to be arguing that even if Titus was not acting under color of law, certain of her allegations demonstrate that he conspired with state actors to deprive Magee of her constitutional rights. Only persons acting under color of state law can be held liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). Section 1983 therefore "secures most constitutional rights from infringement by governments, not private parties." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "A private party may be held liable under § 1983 only if it is a 'willful participant in joint activity with the State or its agents.'" *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)).[5] "[A] plaintiff seeking to hold a private party liable under § 1983

---

[5] In her objections, Magee argues that the Magistrate Judge incorrectly concluded that Magee was required to prove a conspiracy between the private defendants and a state actor in order for the private defendants to be liable under § 1983. Instead, Magee argues it is enough to trigger § 1983 liability if private defendants have engaged in "concerted action" with state actors. Magee fails to explain how a concerted action or joint activity standard is materially different than a conspiracy. Indeed, the Eighth Circuit has consistently used these terms interchangeably in the context of § 1983 cases. *See, e.g.*, *Young v. Harrison*, 284 F.3d 863, 870 (8th Cir. 2002) (using the terms "jointly engaged," "conspiring," "meeting of the minds," and "concerted action," in a single paragraph to describe the necessary relationship between a private and state actor for purposes of § 1983). Furthermore, even if the standard for concerted action was materially different than that of a conspiracy, Magee fails to explain how her proposed amended

(Footnote continued on next page.)

must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor" regarding the violation of plaintiff's constitutional rights. *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) (internal quotation marks omitted). Mere allusion to such a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support. *See Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991); *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985).

In her objections, Magee again merely reiterates the allegations found in her proposed amended complaint, and does not identify any specific facts that were overlooked by the Magistrate Judge in recommending dismissal. Magee alleges generally that Titus had a close relationship with the St. Paul Police Department Chief Harrington. (Proposed Am. Compl. ¶ 25.) This allegation amounts only to a suggestion that Titus may have had an opportunity to conspire, which "is obviously not sufficient to 'nudge' a conspiracy claim 'across the line from conceivable to plausible.'" *See Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010) (quoting *Twombly*, 5520 U.S. at 570).

_____

(Footnote continued.)

complaint would meet this standard. In fact, Magee specifically describes her § 1983 claim as a "conspiracy claim." (Pl.'s Objections at 2.) Finally, it is explicit in the Magistrate Judge's order that Magee's proposed amended complaint failed to allege a relationship between Titus and any state actor sufficient to establish liability under § 1983. The Magistrate Judge specifically stated "Magee does not allege sufficient facts to support a claim that Titus was **working in joint activity** with state officials to deprive Magee of a constitutional right." (R&R at 21, Oct. 15, 2012, Docket No. 56 (emphasis added).) Therefore the Magistrate Judge's decision cannot properly be read as limited only to a finding that Magee had not properly pled a conspiracy, and the Court will overrule this objection.

Similarly, Magee alleges that Titus recruited other officers in the St. Paul Police Department to boycott Hamline until Hamline terminated Magee and that Titus drafted a resolution requesting that the St. Paul Police Department participate in the boycott by ceasing to make contracts with Hamline.  (*See* Proposed Am. Comp. ¶¶ 23-24, 32.)  After the resolution was circulated, Magee alleges that the St. Paul Police Department did not enter into any contracts with Hamline.  (*Id.* ¶ 32.)  Although these allegations, accepted as true, may show that Titus attempted to conspire with the St. Paul Police Department, they do not plausibly indicate that the St. Paul Police Department and Titus had a meeting of the minds where both the Department and Titus jointly agreed to violate Magee's constitutional rights.[6]  Instead Magee's complaint contains only the legal conclusion that Titus "acted in concert with the public defendants to effectuate a common scheme or plan."  (*Id.* ¶ 127.)  These allegations are insufficient to overcome a motion to dismiss.  *See Farm Credit Servs of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (holding that courts are "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) ("Other than the appellant's bare allegations, the record is devoid of any evidence substantiating a claim of conspiracy").  Furthermore, Magee does not allege that the St. Paul Police Department entered into contracts with Hamline prior to the resolution; thus, the

---

[6] Magee's proposed amended complaint also contains numerous allegations of joint action between Titus and the SPPF.  As explained below, because the SPPF is not a state actor, any conspiracy between Titus and the SPPF is insufficient to establish that Titus was acting under color of state law.

Department's alleged failure to do so after the resolution indicates only parallel conduct, which is insufficient to support a conspiracy claim. *See Lawrence*, 740 F. Supp. 2d at 1050-51 ("'An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" (alteration omitted) (quoting *Twombly*, 550 U.S. at 556-57)).[7] Therefore, the Court finds that Magee's proposed amended complaint does not contain sufficient factual allegations to state a § 1983 claim against Titus, because he was not acting under color of state law at the time of the alleged constitutional violations.

### 2.    Section 1983 claim against the Hamline Defendants

Magee also brings § 1983 claims against the Hamline Defendants, arguing that they conspired with Titus and the SPPF to violate Magee's constitutional rights. The Court has already determined that Titus was not a state actor. Similarly, as explained below, the Court will conclude that the SPPF was not a state actor. Because neither of the parties that the Hamline Defendants allegedly conspired with is a state actor, the Hamline Defendants cannot have been acting under color of state law when they

---

[7] Moreover, even to the extent Magee's complaint properly pled concerted action between Titus and the St. Paul Police Department to boycott Hamline, Magee's complaint does not plead a plausible nexus between any state action and a violation of Magee's rights. *See Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus **between the State and the challenged action** that seemingly private behavior may be fairly treated as that of the State itself." (emphasis added) (internal quotation marks omitted)). Magee argues that her constitutional rights were violated when she was terminated from Hamline, allegedly as retaliation for the exercise of her First Amendment rights. But Titus' resolution was issued in 2007, and Magee was not terminated until 2011 after she was convicted of violating Minnesota's tax laws and over four years after Titus' alleged boycott.

allegedly violated Magee's constitutional rights.  *See Gibson*, 557 F.3d at 846 ("A private party may be held liable under § 1983 only if it is a willful participant in joint activity with the State or its agents." (internal quotation marks omitted)).  Therefore, the Court concludes that Magee's complaint fails to state a § 1983 claim against the Hamline Defendants, and will dismiss the claim.

### C.     State Law Claims

The Hamline Defendants also bring a motion to dismiss Magee's claim for intentional interference with a contract against Lewis, and breach of contract against Hamline.  After determining that all of Magee's federal claims should be dismissed, the Magistrate Judge recommended that the Court decline to exercise supplemental jurisdiction over her remaining state law claims.  Magee objects to the Magistrate Judge's recommendation, arguing that the Hamline Defendants may enjoy a "litigative advantage in a state court" and that Magee intends to seek leave to amend her complaint again to add additional federal claims under 42 U.S.C. §§ 1981 and 1985.  (Pl.'s Objections at 13, Oct. 29, 2012, Docket No. 61.)   Lewis also objects to the Magistrate Judge's recommendation that the Court decline to exercise supplemental jurisdiction and dismiss Magee's claim for intentional interference with a contract without prejudice.  Lewis argues that the claim should be dismissed with prejudice in the interests of judicial

economy because the claim is based on the same alleged conduct as that underlying Magee's § 1983 claims.[8]

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). "The Court has broad discretion in deciding whether to continue hearing state claims following dismissal of federal claims." *Shimer v. Shingobee Island Water & Sewer Comm'n*, Civ. No. 02-953, 2003 WL 1610788, at *8 (D. Minn. Mar. 18, 2003). In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigants. *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990). In assessing efficiency, convenience, and fairness, courts look to a number of factors, including "the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (internal quotation marks omitted). "[W]hen federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." *Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir. 1981), *overruled on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988). "If the claim giving original jurisdiction is dismissed early in the action, 'before

---

[8] Because dismissal based on a lack of subject matter jurisdiction is a dispositive matter, the Court addresses the issue *de novo*. *See Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1179 (D. Minn. 1999) (reviewing *de novo* and adopting report and recommendation of magistrate judge recommending dismissal of remaining state law claims after dismissal of sole federal claim).

any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.'" *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) (quoting 28 U.S.C. § 1367 cmt. at 835 (1993)). Courts should "exercise judicial restraint and avoid state law issues wherever possible," *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000), and the factors considered typically point toward declining to exercise supplemental jurisdiction, *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Considering all of these factors, the Court concludes that federal district court is not the most suitable form for adjudicating Magee's state law claims. *See Ivy v. Kimbrough*, 115 F.3d 550, 552-53 (8th Cir. 1997) (explaining that when all federal claims are dismissed pendent state claims are usually "dismissed without prejudice to avoid '[n]eedless decisions of state law . . . as a matter of comity and to promote justice between the parties.'" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Although Magee's complaint was filed almost two years ago, the litigation is still in a very early stage. No discovery has been completed, and the Court has considered only the present dispositive motions. *See Washington v. Daimlerchrysler Fin. Servs. Am. LLC*, Civ. No. 08-0698, 2009 WL 35469, at *2 (D. Minn. Jan. 5, 2009) ("There has been some initial discovery and Plaintiff has filed a non-dispositive motion, but this is not a situation where the court has invested considerable resources into the

matter." (internal quotation marks omitted)).[9]  Therefore, the stage of litigation does not weigh in favor of the Court resolving Magee's state claims in this federal forum.

Lewis argues primarily that the intentional interference claim is not difficult to resolve, and therefore should be determined by the Court, and then proceeds in six pages of objections to explain why the claim should be dismissed.  (Def. Lewis' Objections at 2-8, Oct. 29, 2012, Docket No. 58.)[10]  Lewis' description of why the claim should be dismissed belies his argument that the intentional interference claim would not be difficult to resolve.  For example, Lewis' argument raises factual and legal issues

_____

[9] *See also Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1186 (D. Minn. 1999) (remanding state claims where the litigation was "still comparatively undeveloped," and discovery had not yet closed).

[10] Lewis' objections rely on the argument that Magee's intentional interference claim necessarily fails if her § 1983 claim is dismissed.  In her complaint, Magee states that:

> A valid contract existed between Magee and Hamline University.  Defendant Lewis knew about Magee's employment contract with Hamline.  Defendant Lewis maliciously interfered with Magee's employment contract.  Lewis intentionally induced Hamline to suspend and terminate Magee.  Dean Lewis' conduct was not justified and was illegal (working together with police to retaliate against Magee for her exercise of First Amendment rights).

(Compl. ¶ 26.)  Lewis argues that if the Court determines that the retaliation conduct was not illegal by dismissing the § 1983 claim against Lewis, Magee's claim for intentional interference necessarily fails.  But in Minnesota, a cause of action for intentional interference with a contract does not require a plaintiff to plead that defendant's conduct in interfering with the contract was also illegal on independent grounds.  Instead, "[a] cause of action for wrongful interference with a contractual relationship requires: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages."  *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994) (internal quotation marks omitted).  "Interference is unjustifiable when it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant."  *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 27 (Minn. 1982).  Therefore, in order to establish that Lewis' conduct was not justified, Magee need not plead that his conduct was illegal independent of the interference tort.  That Magee's § 1983 claim will be dismissed against Lewis is not, therefore, dispositive of whether Lewis may be liable for intentional interference with a contract.

concerning his good faith, whether he may be liable as an officer of Hamline, whether he was acting outside the scope of his duties, and whether he acted with malice.   The difficulty of the claim therefore weighs in favor of declining to exercise supplemental jurisdiction.   Furthermore, even if the claim were easily resolved, federal courts should exercise restraint in not unnecessarily resolving state claims.   *See Washington*, 2009 WL 35469, at *2 ("[A]lthough the remaining claims concern neither difficult nor unsettled areas of state law, judicial restraint counsels against resolving them where it appears that little of the parties, or the Court's resources have already been devoted to their merits." (internal quotation marks omitted)).[11]   The Court finds that the difficulty of the claim weighs in favor of declining to exercise supplemental jurisdiction.

Additionally, the parties have not devoted substantial time and energy to resolving the state law claims in this Court, which also weighs in favor of declining to exercise supplemental jurisdiction.   Although the parties and the Court have examined the factual allegations underlying the § 1983 claims and some of those factual issues are related to the state law claims, the state law claims also raise numerous independent factual and legal issues.   Courts frequently decline to exercise supplemental jurisdiction over state law claims, even though federal claims may arise from the same set of facts.   *See Hanson-Haukoos v. Hormel Foods Corp.*, Civ. No. 05-1575, 2006 WL 3060485, at *6-7

---

[11] Additionally, Lewis argues that the claim against him should be resolved for reasons of judicial efficiency.   But it would not be efficient, nor particularly convenient, for the Court to resolve the intentional interference claim while declining to exercise supplemental jurisdiction over the breach of contract claim asserted against Hamline, which no defendant has argued should be resolved by this Court.

(D. Minn. Oct. 26, 2006) (declining to exercise supplemental jurisdiction over a wrongful termination and defamation claim which arose out of the same operative facts as plaintiff's dismissed federal claim).[12]   Therefore, the Court finds that the amount of time and energy necessary to resolve the remaining state law claims also weighs in favor of declining to exercise supplemental jurisdiction.

Finally, the parties do not dispute that there is an available state forum in which to resolve the remaining state claims.   Although Magee has suggested that she intends to bring more federal claims against Defendants, Magee did not assert these claims in either her original or her proposed amended complaint.   The Court will not exercise supplemental jurisdiction over claims that are properly litigated in state court based upon the hypothetical introduction of other federal claims.   The Court concludes that this case is "the usual case in which all federal-law claims are eliminated before trial" wherein "the balance of factors to be considered . . . point toward declining to exercise jurisdiction over the remaining state-law claims."   *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).   Therefore, the Court expresses no viewpoint on the merits of Magee's state law claims and will decline to exercise supplemental jurisdiction over these claims.

---

[12] *See also Wallin v. Minn. Dep't of Corr.*, 974 F. Supp. 1234, 1244-45 (D. Minn. 1997) (declining to exercise supplemental jurisdiction over plaintiff's breach of contract and tortious interference with contract claims arising out of the same termination facts that were the basis of plaintiff's dismissed § 1983 claim).

## II.    MOTION TO AMEND

### A.    Standard of Review

Typically the standard of review applicable to an appeal of a magistrate judge's order on nondispositive pretrial matters, such as leave to amend a complaint, is extremely deferential.  *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); *see also Damon v. Groteboer*, Civ. No. 10-92, 2013 WL 53833, at *1-2 (D. Minn. Jan. 3, 2013).  The Court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).  However, the Court reviews *de novo* a magistrate judge's determination that a motion to amend a pleading will be denied because the amendment would be futile.  *See, e.g, Am. Ins. Co. v. St. Jude Med. Inc.*, 597 F. Supp 2d 973, 977 (D. Minn. 2009); *cf. In re NVE Corp. Sec. Litig.*, 527 F.3d 749, 752 (8th Cir. 2008) ("We ordinarily review the denial of leave to amend a complaint for abuse of discretion, but when the district court denies leave on the basis of futility we review the underlying legal conclusions de novo.").

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted).

Amendment is futile where the proposed amended claim would not withstand a motion to dismiss.  *See Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008).

Here, the Magistrate Judge granted Magee's motion to amend the complaint to add additional factual allegations.  No party has objected to this portion of the Magistrate Judge's order, and the Court will affirm this determination as it is neither erroneous nor contrary to law.  But the Magistrate Judge denied Magee's motion to the extent it sought to add a new defendant and additional claims, because the Magistrate Judge determined that amendment as to each claim would be futile.  Therefore, the Court applies a *de novo* standard of review to the Magistrate Judge's order denying in part Magee's motion to amend her complaint.

### B.      Amendment as of Right

In her objections, Magee argues for the first time that she should have been allowed to amend her complaint as a matter of right, and the Magistrate Judge therefore erred in denying her motion to amend.  Federal Rule of Civil Procedure 15 provides that "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Magee's original complaint was filed on April 15, 2011, and she brought a motion to amend her complaint on May 11, 2012, well outside of the twenty-one days after service contemplated by Rule 15(a)(1)(A).  Therefore, Magee could only be entitled to amend as of right if her amended complaint was filed within twenty-one days of either a responsive pleading or a motion under Rule 12.  Defendants filed their motions to dismiss under Fed. R. Civ. P. 12(b)(6) on April 20, 2012.[13]  Magee filed a motion for leave to amend her complaint on May 11, 2012.  (Mot. to Amend, May 11, 2012, Docket No. 32.)  This motion was filed within twenty-one days of Defendants' motions to dismiss, indicating that Magee may have been entitled to amendment as of right.  But Magee did not actually file her amended complaint until May 14, 2012, (Ex., May 14, 2012, Docket No. 36), after the twenty-one day period for filing as of right expired.  It is insufficient for purposes of amendment as of right under Rule 15(a)(1) to simply file a motion to amend within the twenty-one day time period, without actually filing a copy of the amended pleading.  *See* D. Minn. LR 15.1(a) ("Any motion to amend a pleading must be accompanied by . . . a copy of the proposed amended pleading[.]"); *Brodkorb v. Minnesota*, Civ. No. 12-1958, 2013 WL 588231, at *8 (D. Minn. Feb. 13, 2013) (denying plaintiff's motion for leave to amend as of right where, among other procedural problems

---

[13] Defendants contend that the relevant motion from which to count twenty-one days was the motion to dismiss for failure of service filed by the Hamline Defendants on February 3, 2012. (Mot. to Dismiss, Feb. 3, 2012, Docket No. 8.)  But this motion was brought under Federal Rule of Civil Procedure 4(m), which is not a rule governing amendment of complaints under Rule 15(a).  Therefore, for purposes of determining whether Magee was entitled to amend her complaint as of right, the February 3, 2012 motion to dismiss is irrelevant.

"the request is unaccompanied by any proposed amended pleading").[14]   Because Magee

failed to file her amended complaint within the twenty-one day period for filing as of

right, the Magistrate Judge properly considered Magee's request to amend her complaint

as one requiring the court's permission.  *See* Fed. R. Civ. P. 15(a)(2).

### C.      Proposed Claim for Violation of Section 1983 Against the SPPF

In her proposed amended complaint, Magee asserts a § 1983 claim against a new

party, the St. Paul Police Federation.  The SPPF is a labor union that represents St. Paul

police officers.  Titus was the president of the SPPF during the time period of the conduct

alleged in Magee's complaint.  (Proposed Am. Compl. ¶ 14.)  As explained above, to

state a claim under § 1983, Magee must show that the alleged violation of her

constitutional rights "was committed by a person acting under color of state law."  *See*

*West*, 487 U.S. at 48.

Labor organizations are generally not state actors within the meaning of § 1983.

*See Stodghill v. Serv. Emps. Int'l Union, Local 50, AFL-CIO, CLC*, 192 F.3d 1159, 1162

(8th Cir. 1999); *O'Connor v. City of St. Paul*, Civ. No. 01-846, 2001 WL 1677605, at *5

(D. Minn. Dec. 21, 2001).   Moreover, "the fact that the Union represents public

employees does not make it a state actor."  *Dorcely v. Wyandanch Union Free Sch. Dist.*,

No. 06-CV-1265, 2007 WL 2815809, at *4 (E.D.N.Y. Sept. 25, 2007).  The mere fact

---

[14] *See also Merritt v. Fogel*, 349 F. App'x 742, 745 (3d Cir. 2009) (noting that a motion
to amend the complaint can be construed as the filing of an amended complaint for purposes of
Fed. R. Civ. P. 15(a)(1) when the "amended complaint was attached" to the motion; *Johnson v.
District of Columbia*, 244 F.R.D. 1, 4 (D.D.C. 2007) (explaining that to comply with Rule
15(a)(1) "[t]he plaintiff need only file the amended pleading").

that the SPPF was made up of police officers is therefore insufficient to demonstrate liability under § 1983. Magee has not alleged that the SPPF was a state actor; therefore, Magee's proposed amended complaint can only state a claim against the SPPF to the extent it properly pleads that the SPPF engaged in concerted action with the St. Paul Police Department to violate Magee's constitutional rights.[15] *See Peltonen v. Branch No. 9*, Civ. No. 05-605, 2006 WL 2827239, at *23 (D. Minn. Sept. 29, 2006) ("[T]here are occasions where a private party such as a union may be liable under § 1983 for conspiring with public officials 'to violate a private citizen's right to freedom of speech under the First Amendment, just as it may be held liable for conspiring to violate other constitutional rights.'" (quoting *Dossett*, 399 F.2d at 950)).

In her objections, Magee makes only general references to allegations regarding a conspiracy, and the focus of Magee's allegations is on the existence of conspiracy between Titus, the SPPF, and Hamline, none of which are state actors. The only concrete allegation alleging the existence of a conspiracy between the SPPF and the St. Paul Police Department is the resolution drafted by Titus asking the Department to boycott Hamline. As explained above, although this allegation may show that the SPPF attempted to conspire with the Department, it does not indicate that the Department had a meeting of minds with the SPPF to deprive Magee of her constitutional rights. The other allegations referenced by Magee in her objections either refer only to alleged connections between non-state actor defendants or contain conclusory statements that the SPPF

---

[15] Because the Court has already determined that Titus was not a state actor with respect to the conduct alleged by Magee's complaint, a conspiracy between Titus and the SPPF would be insufficient to establish the SPPF's § 1983 liability.

conspired with the St. Paul Police Department.  (*See, e.g.*, Proposed Am. Compl. ¶¶ 125-26.)  These allegations are insufficient to demonstrate the existence of concerted action for purposes of imposing § 1983 liability.  *See Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam) (explaining that allegations must at least include that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding" and provide some facts suggesting a meeting of the minds).  Therefore, the Court concludes that the Magistrate Judge correctly determined amendment to add the SPPF as a defendant would be futile.

### D.    Proposed State Law Claims

Magee also sought to amend her complaint to add claims for tortious interference with an employment contract against Titus and the SPPF as well as claims for promissory estoppel, breach of the duty of good faith and fair dealing, and defamation against Hamline.  The Magistrate Judge determined that each of these claims would be futile, and therefore denied Magee's motion to amend.  Because the Court has declined to exercise supplemental jurisdiction over Magee's state law claims, it need not consider Magee's objections to the Magistrate Judge's futility determination.  Even if these state law claims were not futile, the Court would decline to exercise jurisdiction over them.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Plaintiff's objections [Docket No. 61] and Defendant Donald Lewis' objections [Docket No. 58].  Accordingly, **IT IS HEREBY ORDERED** that:

1.      The Magistrate Judge's October 15, 2012 Order [Docket No. 56] is **AFFIRMED**.

2.      The Report and Recommendation of the Magistrate Judge's [Docket No. 56] is **ADOPTED**.

3.      Defendant David Titus' Motion to Dismiss [Docket No. 20] is **GRANTED**. Plaintiff's Section 1983 Claim (Count I) against Defendant Titus is **DISMISSED with prejudice**.

4.      The Hamline Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 24] is **GRANTED**.

    a.      Plaintiff's Section 1983 Claims (Count I) against the Trustees of the Hamline University are **DISMISSED with prejudice**.

    b.      Plaintiff's Intentional Interference with a Contract Claim against Donald Lewis (Count II) is **DISMISSED without prejudice**.

    c.      Plaintiff's Breach of Contract Claim against the Trustees of the Hamline University (Count III) is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 29, 2013              _s/ John M. Tunheim_
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                        United States District Judge